IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| FABIAN GREY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 9:18-cv-01764-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| L. FRANK CISSNA, Director, | ) | |
| United States Citizenship and Immigration | ) | |
| Services, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on the motion of L. Frank Cissna, Director of the United States Citizenship and Immigration Services ("USCIS" or "the government") to remand plaintiff Fabian Grey's ("Grey") application for naturalization to USCIS for adjudication, ECF No. 12. For the reasons set forth below, the court denies the motion to remand.

## I. BACKGROUND

This matter arises out of Grey's application for naturalization. Grey is Jamaican citizen who first entered the United States on a work visa on November 30, 2005. On February 2, 2006, Grey married a United States citizen, Trinia Smalls ("Smalls"), and Smalls petitioned for a marriage-based green card for Grey. Based on this petition, Grey became a conditional lawful permanent resident on January 12, 2007.[1] About two years

---

[1] Grey's complaint alleges that the date was January 12, 2007, but the NOID indicates that the date was January 11, 2007. The court need not resolve this discrepancy for resolution of the instant motion.

1

later, Grey and Small petitioned to have the condition on Grey's residency removed, and USCIS granted the petition, making Grey a permanent resident.

Then on February 17, 2016, Grey filed a Form N-400 Application for Naturalization. USCIS subsequently conducted Grey's naturalization interview on September 7, 2017, at which time he certified under oath that all of the information on the application and the statements made by him during the interview were true and correct. The government alleges that during Grey's interview, Grey admitted that he had a biological child who was born on October 2, 2015, but that Grey had indicated on his naturalization application that he had no biological children. Grey allegedly stated at the interview that his wife was not the child's mother. Grey allegedly further stated that the child had resided with him since her birth, which, according to the government, contradicts Grey's naturalization application that stated that only Grey, Smalls, and Smalls's biological child lived at his address of record. After the interview, Grey's case was continued for additional review.

285 days passed. Then on June 19, 2018, two immigration officers visited Grey's house in Bluffton, South Carolina to conduct a site visit regarding Grey's claim in his naturalization application that he and Smalls lived there together. The parties dispute exactly what occurred during this visit. According to Grey, the officers arrived at his home unannounced and approached him in his garage, asking whether they could come into his home and ask him questions. Grey invited them into his house, and upon entering, one of the officers allegedly started rifling through Grey's mail. In addition, one of the officers allegedly picked up Grey's cell phone, read the incoming messages without asking permission, and took a picture of Grey's cell phone screen with his own

phone. Grey claims that the officers then walked into his bedroom, looked through a drawer that contained his wife's clothes, and began verbally abusing Grey, accusing him of committing marriage fraud. The officers then allegedly told Grey that they knew his wife lived in Varnville, South Carolina and that they knew Grey's wife had stayed at her mother's house in Varnville the night before. Grey claims that he told the investigators that his wife's ailing mother lives in Varnville, his wife takes care of her mother at least three days out of the week, and that his wife's car was at her mother's house because his wife driven her mother to the hospital in Charleston, South Carolina in her mother's car and left her car at her mother's house. Grey alleges that the officers refused to listen to Grey's answers, and that once Grey asked if he could call his immigration attorney, the officers quickly left.

According to the government, the immigration officials conducted a routine site visit during which Grey gave conflicting information regarding the location of his wife. He first allegedly stated that she was at work but later claimed that she had been out of town for the previous two weeks visiting her mother who was hospitalized in Charleston. The government also contends that Grey later informed the officers that Smalls actually divided her time between Bluffton and Varnville. The officers claim to not have seen any indication that Smalls lived at Grey's home, as there was nothing belonging to her in the home. In addition, the government contends that Grey allowed them to see his cell phone and that the cell phone contained no texts or call between Grey and Smalls but instead contained romantic text messages between Grey and the mother of Grey's biological child. After this site visit, USCIS conducted additional research on Smalls's address of record. A review of several databases, including the South Carolina Department of

Motor Vehicles, revealed that for the last ten years, Smalls has listed a residential address in Varnville, South Carolina.

On June 26, 2018, Grey filed a Freedom of Information Act ("FOIA") request with USCIS. Then on June 27, 2018, Grey filed suit asking the court to declare him eligible for naturalization and order USCIS to naturalize him pursuant to 8 U.S.C. § 1447(b) and seeking an order compelling USCIS to respond to his FOIA request pursuant to 5 U.S.C. § 552(a)(4)(B). On August 3, 2018,[2] USCIS issued a Notice of Intent to Deny ("NOID") to Grey, indicating that it intends to deny Grey's naturalization application and providing Grey 30 days to respond with evidence that his application should not be denied. USCIS subsequently filed a motion to remand Grey's application for naturalization to USCIS for adjudication on September 7, 2018. ECF No. 12. On September 21, 2018, Grey filed a response, ECF No. 13, and on September 28, 2018, USCIS filed a reply, ECF No. 14. The court held a hearing on the motion on November 28, 2018. The motion is ripe for review.

## II. DISCUSSION

The government asks that the court remand this case to USCIS so that USCIS can issue a decision on Grey's pending naturalization application. This case consists of two causes of action—one that seeks judicial review of Grey's naturalization application and one that seeks an order compelling USCIS to respond to Grey's FOIA request. The court

---

[2] Grey states that the date of the NOID is August 8, while the government states that the date is August 3. It is admittedly difficult to determine if the date stamp on the NOID says 3 or 8. The court reads the date stamp as August 3, but given the five-day difference between the two dates, the exact day does not meaningfully impact the court's analysis.

addresses whether remand is appropriate for each cause of action and ultimately declines to remand either.

### A. Judicial Review of Naturalization Application

The government argues that this case should be remanded to USCIS so that the USCIS can issue a decision on Grey's naturalization application. Before considering the parties' arguments, it is useful to first review the naturalization process. An applicant begins the naturalization process by filing an "Application for Naturalization" with the Department of Homeland Security and USCIS. Ndumu v. U.S. Dep't of Homeland Sec., 2014 WL 5495680, at *1 (D. Md. Oct. 29, 2014) (citing 8 U.S.C. § 1445(a), (d)). Thereafter, USCIS must conduct a background investigation and an examination of the applicant. 8 U.S.C. § 1446(a)–(b). After USCIS completes the background investigation and examination, a USCIS official grants or denies the application. 8 U.S.C. § 1446(d); 8 C.F.R. §335.3. The official must make said decision within 120 days following the initial examination of the applicant. Id.[3] If USCIS fails to make said determination within 120 days of the interview, the applicant may file a lawsuit in United States district court seeking adjudication of his application. Id. § 1447(b). The court "may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." Id. Therefore, "it is entirely within the discretion of the court to either deny

---

[3] The majority of courts have found that "examination" in § 1447(b) refers to the interview that USCIS conducts after receiving a naturalization application, not the completion of its entire review of the application, including background checks. See, e.g., Manzoor v. Chertoff, 472 F. Supp. 2d 801, 803–04 (E.D. Va. 2007) ("It is clear from the plain language of these regulations that the term 'examination' in 8 U.S.C. § 1447(b) means the initial interview of an applicant."); Antonishin v. Keisler, 627 F. Supp. 2d 872, 874–84 (N.D. Ill. 2007) (agreeing with "the majority view that the 'examination' is the applicant's interview").

the motion to remand and assert jurisdiction or grant the motion to remand and allow the naturalization petition to be adjudicated by USCIS." Abusamhadneh v. Napolitano, 2010 WL 1734772, at *1 (E.D. Va. Apr. 26, 2010).

It is undisputed that this action commenced more than 120 days after Grey was initially examined by USCIS on September 7, 2017. It is also undisputed that this court has exclusive jurisdiction over the application now that this suit has been filed, and that USCIS will not regain jurisdiction to adjudicate Grey's application unless the court remands the case to the agency. Etape v. Chertoff, 497 F.3d 379, 381 (4th Cir. 2007).

USCIS argues that the court should remand this matter for three reasons: (1) "remand will allow USCIS to proceed with the NOID in order to determine whether Grey can establish he has been lawfully admitted for permanent residence, and has the 'good moral character' required to naturalize"; (2) "remand will ensure that Grey receives an expeditious decision on his naturalization application without denying him the right to eventually seek de novo judicial review of that decision" under 8 U.S.C.§ 1421(c); and (3) remand will "preserve judicial resources" by "spar[ing] this Court the burden of reviewing Grey's naturalization application in the first instance." ECF No. 12 at 4–6. In response, Grey contends that the court should not remand and instead adjudicate his application. Grey argues that USCIS had no good reason not to act on his application within 120 days of his interview and that remand would be futile because USCIS has already considered all of the information in his application and has indicated that it will deny the application.

The court agrees with Grey that USCIS's failure to provide a good reason for its delay is fatal to the government's motion to remand. As the Fourth Circuit has noted,

"[w]hen the [USCIS] has good reasons for failing to act, certainly a district court has the option to remand the matter to give the agency additional time." Etape, 497 F.3d at 386 n.5. It appears that USCIS's failure to grant or deny Grey's application within the 120-day time frame after his interview is due to the discrepancies in his application and interview. As the NOID explains, "[u]pon conclusion of the interview, [Grey's] case was continued for additional review." ECF No. 12-1 at 2. Moreover, the information that USCIS learned during the visit of Grey's house appears to have further lengthened the delay. However, USCIS provides little to no explanation as to why it took so long to (1) conduct its investigation at Grey's house, which occurred 285 days after the interview, and (2) issue the NOID, which occurred 330 days after the interview. USCIS first explains in its reply brief that "if there are issues of potential fraud, then the matter must be handled by the Fraud Detection and National Security Division ("FDNSD")" and "[s]uch was the case here." ECF No. 14 at 2. However, USCIS does not explain why the FDNSD's handling of a matter warrants an extension of time beyond 120 days after an applicant's interview.

USCIS also asserts that the immigration system is overburdened, and that the estimated wait time for processing N-400 applications is between 3.5 and 13.5 months. These arguments do nothing to convince the court that USCIS had good reason for failing to act. The court will not endorse the notion that this matter should be remanded simply because the immigration system is overburdened. Moreover, the estimated wait times for processing naturalization applications is equally unconvincing. Grey filed his N-400 application on February 17, 2016. If USCIS processed his application in 13.5 months, the longest amount of time provided in the government's range of wait times, Grey would

have received a decision in March 2017. That is six months before USCIS even conducted Grey's naturalization interview, and 17 months before USCIS issued its NOID, which isn't even USCIS's final determination. Viewing this timing from another perspective, from the time Grey filed his application to the time USCIS issued its NOID, 30 months had passed. That far exceeds the 13.5-month upper limit of the range of processing times provided by the government.

To be sure, "the vast majority of courts that have exercised jurisdiction over a case pursuant to § 1447(b) have remanded the matter." Manzoor v. Chertoff, 472 F. Supp. 2d 801, 810 (E.D. Va. 2007). However, those courts had been provided with good reason as to why there was a delay in USCIS's decision on the naturalization applications. See Manzoor v. Chertoff, 472 F. Supp. 2d 801, 802 (E.D. Va. 2007) ("CIS informed Manzoor that it could not yet make a decision on his application because the three mandatory background checks had not been completed."); Khelifa v. Chertoff, 433 F. Supp. 2d 836, 839 (E.D. Mich. 2006) ("Plaintiff allegedly was told that he had satisfied most of the requirements for citizenship, but that the agency was still awaiting the outcome of the criminal background check."); El-Daour v. Chertoff, 417 F. Supp. 2d 679, 684 (W.D. Pa. 2005) ("The FBI has not yet completed the criminal background check."); Ge v. United States Citizenship & Immigration Servs., 2019 WL 2713052, at *2 (E.D. Va. June 28, 2019) ("The FBI has completed Ge's standard background check as required by USCIS, 8 C.F.R. § 335.2(b), but the DOD has not completed Ge's enhanced background check, accounting for the delay in his naturalization application."); Shalabi v. Gonzales, 2006 WL 3032413, at *2 (E.D. Mo. Oct. 23, 2006) ("The USCIS maintains that it is unable to adjudicate Shalabi's application until it receives the results of Shalabi's

8

'name check' from the FBI."); Daami v. Gonzales, 2006 WL 1457862, at *2 (D.N.J. May 22, 2006) ("[Defendants] claim that plaintiff's application has been delayed because the Federal Bureau of Investigation ("FBI") has not yet completed the background check on plaintiff."); Essa v. U.S. Citizenship & Immigration Servs., 2005 WL 3440827, at *2 (D. Minn. Dec. 14, 2005) ("The court, however, finds itself unable to adjudicate either application for the very reason CIS has been precluded from making a final decision—the FBI background check has not been completed."). Here, all the court has to rely on as to why there has been such a delay in a decision on Grey's application is a vague reference to an overburdened immigration system, a range of application processing wait times for which Grey's wait time has far exceeded, and a brief mention of the general involvement of FDNSD in Grey's case. To be sure, USCIS may have been taken additional steps in its investigation that warrant the delay in a decision on Grey's application. The government generally argues that to be true here. See ECF No. 14 at 6 ("In this case, the Agency's delay in issuing a decision after the interview resulted from its investigation into indications of fraud in [Grey]'s Lawful Permanent Resident ("LPR) status."). But USCIS has failed to describe or even identify those steps to the court, nor has the government explained why the investigation took so long.[4]

The lack of reassurance by USCIS that this matter would be resolved promptly if the court remanded also convinces the court to retain jurisdiction. "In the few cases

---

[4] For example, the NOID indicates that after officials visited Grey's house in June 2018, USCIS conducted additional research related to where Grey's wife lives. However, while the NOID shows that this additional research took place, it does not state how long it took to conduct the research. The government also does not rely on this information in its briefs. Moreover, the additional investigation after the June 2018 visit does not account for the delay between Grey's September 2017 interview and the June 2018 visit.

where a district court opted to adjudicate the matter itself, the application had been pending for a lengthy period and the defendants failed to assure the court that a swift decision could be made on remand." Rashid v. Dep't of Homeland Sec., 2017 WL 1398847, at *2 (E.D. Cal. Apr. 19, 2017). Here, USCIS has failed to assure the court that it will make a swift decision on remand. Instead, the government simply requests that, if the court remands, USCIS have 30 days to issue a decision upon receipt of Grey's response to the NOID. ECF No. 14 at 3 n.2. While the court does not doubt that USCIS would abide by the court's order to make a decision within a certain time period if the court were to remand the case, the court would be more assured that USCIS would act in a timely manner if the government provided stronger, affirmative assurance, such as a declaration from a USCIS official. See Yue Zhang v. United States Citizenship & Immigration Servs., 2017 WL 3190559, at *2 (D.D.C. July 26, 2017) (remanding in part because USCIS submitted a declaration that it would resolve the application within 21 days of remand); Rashid, 2017 WL 1398847, at *2 (E.D. Cal. Apr. 19, 2017) (remanding in part because USCIS submitted a declaration stating that if the case were to be remanded, USCIS would resolve the application within sixty days).

      The court also finds that the various policy arguments frequently discussed by courts in considering whether remand under § 1447(b) is appropriate weigh in favor of the court retaining jurisdiction. One factor that courts rely on in remanding naturalization cases is a court's inability or lack of resources necessary to resolve the issue that has prevented a naturalization decision. This is common in cases in which the delay in a decision on the application is caused by a pending criminal background check. For example, in El-Daour, the court remanded the case to USCIS because the FBI had not yet

completed the plaintiff's background check, and the court did "not have the resources at [its] disposal to determine whether [the plaintiff] presents a risk to national security or to public safety." 417 F. Supp. 2d at 684; see also Essa, 2005 WL 3440827, at *2 ("[T]he FBI criminal background check is a vital piece of information and absent such information the court system is simply not equipped with the resources necessary to ensure a thorough investigation prior to the giving of the naturalization oath."). Here, the issues that appear to have delayed the decision on Grey's application are discrepancies between Grey's naturalization application and information that he provided during his interview, as well as information discovered during USCIS's visit to Grey's home. Resolving discrepancies in evidence and weighing the credibility of evidence are functions that are inherent in a court's role, and that is exactly what the court would be required to do here.

Courts also frequently discuss the fact that USCIS is the party that is in the best position to adjudicate naturalization applications. See Ndumu, 2014 WL 5495680, at *2 ("USCIS is in the best position to adjudicate naturalization applications."); Abusamhadneh, 2010 WL 1734772, at *2 ("In determining whether remand of an immigration action for administrative disposition was appropriate [ ] the Supreme Court has warned that '[a court] should remand a case to an agency for decision of a matter that statutes place primarily in agency hands[, which] has obvious importance in the immigration context.'" (quoting INS v. Ventura, 537 U.S. 12, 16–17 (2002))); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("Judicial deference to the Executive Brach is especially appropriate in the immigration context."). However, Congress would not have statutorily granted courts the jurisdiction to adjudicate naturalization application

11

if it believed that all naturalization decisions should be determined by USCIS. In other words, if USCIS was always in the better position to adjudicate naturalization applications, § 1447(b) would be meaningless. As such, "[t]his Court will not shirk its Congressionally-authorized oversight function of the naturalization application process." Omran v. Dep't of Homeland Sec., 2008 WL 320295, at *5 (S.D. Ohio Feb. 4, 2008).

In sum, at the time Grey filed this suit, he had been waiting for a decision on his naturalization application for approximately two and a half years. The government has provided no reason for this lengthy delay other than vague and general statements and has failed to adequately reassure the court that USCIS would issue a decision on Grey's application in a timely manner should the court remand the case. Therefore, the court denies the government's motion to remand and retains its jurisdiction over this case.

### B. FOIA Request

Based on the government's motion to remand, it is unclear if the government also seeks dismissal of Grey's FOIA cause of action.[5] On June 26, 2018, Grey submitted a FOIA request for documents held by USCIS. Having received no response, Grey now asks the court to order USCIS to produce these documents pursuant to 5 U.S.C. § 552(a)(4)(B), which provides that "[o]n complaint, the district court of the United States . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." The government did not address the FOIA cause of action in its motion the remand, and

---

[5] Clearly, there would be no authority for the court to remand this issue to USCIS. See 5 U.S.C. § 552(a)(4)(B).

in Grey's response, Grey stated that he views the government's silence on the issue as the government not seeking dismissal of his FOIA cause of action.

The government briefly addressed this issue in its reply, claiming that the FOIA cause of action is a red herring. The government argues that all of the evidence regarding Grey's naturalization application comes directly from his naturalization interview and his discussions with officials during the site visit as well as publicly available documents. USCIS contends that the only documents that are not publicly available relate to Smalls, and that Grey would likely not be able to access those under FOIA due to the protections of the Privacy Act.

The government's argument, which was only raised in its reply, fails to provide the court with any legal basis to dismiss Grey's FOIA cause of action. As such, Grey's FOIA cause of action will proceed.

### III. CONCLUSION

For the foregoing reasons, the court denies the motion to remand.

**AND IT IS SO ORDERED.**

_____
      **DAVID C. NORTON**
      **UNITED STATES DISTRICT JUDGE**

**September 16, 2019**
**Charleston, South Carolina**