IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| FABIAN GREY, | ) |
| Plaintiff, | ) ) ) No. 9:18-cv-01764-DCN |
| vs. | ) ) **ORDER** |
| KEN CUCCINELLI,[1] Acting Director, United States Citizenship and Immigration Services, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

The following matter is before the court on plaintiff Fabian Grey's ("Grey") motion to quash, ECF No. 44; and defendants Ken Cuccinelli ("Cuccinelli") and United States Citizenship and Immigration Services's ("USCIS") (collectively, "defendants") motion for summary judgment, ECF No. 45. For the reasons set forth below, the court grants the motion to quash and denies the motion for summary judgment without prejudice.

### I.  BACKGROUND

**A. Procedural History of Case**

This matter arises out of Grey's application for naturalization. Grey is Jamaican citizen who first entered the United States on a work visa on November 30, 2005. On February 2, 2006, Grey married a United States citizen, Trinia Smalls ("Smalls"), and Smalls petitioned for a marriage-based green card for Grey. Based on this petition, Grey

---

[1] Acting Director Ken Cuccinelli is automatically substituted for former Director L. Francis Cissna, who resigned effective June 1, 2019. Fed. R. Civ. P. 25(d).

became a conditional lawful permanent resident in January 2007. About two years later, Grey and Smalls petitioned to have the condition on Grey's residency removed, which USCIS granted, making Grey a permanent resident. On February 17, 2016, Grey filed an application for naturalization. After a substantial delay in a decision on his application, Grey filed this suit on June 27, 2018 asking the court to declare him eligible for naturalization and order USCIS to naturalize him pursuant to 8 U.S.C. § 1447(b), and then subsequently amended his complaint to add a cause of action seeking an order compelling USCIS to respond to his pending Freedom of Information Act ("FOIA") request pursuant to 5 U.S.C. § 552(a)(4)(B). At the beginning of August 2018, USCIS issued a Notice of Intent to Deny ("NOID") to Grey, indicating that it intends to deny Grey's naturalization application based on marriage fraud and providing Grey 30 days to respond with evidence that his application should not be denied. USCIS then filed a motion to remand Grey's application for naturalization to USCIS for adjudication, which the court denied.

### B. Facts Relevant to Motion to Quash

On his naturalization application, Grey indicated that he had no biological children, and he initially confirmed this at his interview. However, upon further questioning, Grey admitted that he has a biological daughter, that Smalls was not his daughter's biological mother, and that he was not required to pay child support because his daughter lived with him and had since her birth. Despite these statements, Grey indicated on his naturalization application that only Grey, Smalls, and Smalls's biological child lived at his address of record. The biological mother of Grey's daughter is Courtney Haynes ("Haynes").

2

On January 28, 2020, two officers went to Haynes's home to interview her and to request her consent to release any records related to Grey's and Haynes's daughter from the South Carolina Department of Health and Human Services ("SC DHHS"), with particular interest in Medicaid records. Haynes was not at home at the time but later called the officers and was interviewed over the phone. During the interview, Haynes said that her daughter did not receive federal or state benefits. Later, the officer called Haynes again to ask her to sign a release for records, and Haynes stated that her daughter is on her grandmother's SNAP account. Haynes declined to sign the records release. USCIS also asked for Grey's consent to release his daughter's SC DHHS records, which Grey has declined on the grounds that the records are not relevant. On February 6, 2020, counsel for defendants sent Grey's counsel a letter to serve as notification that they planned to issue a subpoena to SC DHHS to obtain Grey's daughter's records. ECF No. 44-2. As a result of this letter, Grey filed a motion to quash on February 24, 2020. ECF No. 44. Defendants responded to the motion on March 9, 2020. ECF No. 47. Grey did not reply, making the motion ripe for review. The court held a hearing on the motion on June 8, 2020.

**C. Facts Relevant to Motion for Summary Judgment**

Grey filed a FOIA request on June 26, 2018. He requested the following records from USCIS:

a. Requestor's complete Alien Registration File;

b. All documents indicating transfer of Requestor's Alien Registration File;

c. All adjudicator's notes, memos, correspondence, communications, e-mails, legal research, factual research, intra-agency referrals for fraud, national security, or other investigations, and draft decisions or memos for any immigration benefit sought by or on behalf of the Requestor;

3

> d. All agency-wide, Charleston Field Office, or Greer Field Office policies, memos, guidance, notes, investigations, or other documents that indicate agency or field office policy that relate to Jamaican nationals seeking marriage-based immigration benefits or naturalization after acquiring permanent residency through marriage-based immigration benefits;
>
> e. All marriage fraud training materials, policies, examples, or any other document provided to, created by, or distributed for the benefit of the adjudicators, supervisory adjudicators, any other employee in the Charleston Field office or Greer Field Office for the last two years.

ECF No. 45-1 at 13. USCIS produced its first round of hard copies of responsive records on October 21, 2019 that were later e-mailed to Grey's counsel. Some of the records were redacted. Then on November 29, 2019, Grey served Requests for Production, some of which overlapped with his FOIA request. They include requests for:

> 1. All documents, whether written, electronic, or in any other form, that Defendants contend establish or support any fact upon which you base your defense in this lawsuit.
>
> . . .
>
> 5. The complete alien registration file for Mr. Grey (A096811204).
>
> . . .
>
> 7. All correspondence involving Mr. Sullivan, Mr. Lyttle, or Mr. Brown related [to] Mr. Lyttle and Mr. Sullivan's "site visit" to Mr. Grey's home on June 19, 2018.
>
> 8. All contemporaneous and edited reports, notes, pictures, findings, or any other recorded recollection or piece of hard evidence that Mr. Lyttle or Mr. Sullivan drafted, acquired, assisted with, or gathered during the June 19, 2018 "site visit" of Mr. Grey's home.

ECF No. 45-2. Defendants produced responsive documents and an accompanying privilege log on January 17, 2020.

Based on these productions, defendants filed a motion for summary judgment on February 28, 2020 seeking summary judgment on Grey's FOIA claim. ECF No. 45.

Defendants explained that their FOIA-related searches would be completed by March 31, 2020 but that they went ahead and filed their motion to keep the case moving. In so explaining, they agreed to extending the deadline for Grey's response brief until after Grey received the final FOIA production from USCIS. Grey subsequently received the final FOIA production and then submitted his response to defendants' motion on May 20, 2020. ECF No. 52. Defendants replied on May 27, 2020, ECF No. 54, making the motion ripe for review. The court held a hearing on the motion, along with the motion to quash, on June 8, 2020.

## II.  STANDARD

### A. Motion to Quash

Under Fed. R. Civ. P. 45, a party may serve a subpoena for the production of discoverable material on a non-party. Rule 45 governs demands upon nonparties for the production of persons or materials, and a subpoena issued under this rule may command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession." Fed. R. Civ. P. 45(a)(1)(A)(iii). On a timely motion, a district court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). The scope of discovery under a subpoena is the same as the scope of discovery under Fed. R. Civ. P. 26(b). Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012).

A party only has standing to challenge a third-party subpoena if "the party claims some personal right or privilege in the information sought by the subpoena." United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005). "[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." Sherrill v. DIO Transp., Inc., 317 F.R.D. 609, 612 (D.S.C. 2016).

### B. Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

#### A. Motion to Quash

Grey seeks to quash defendants' not-yet-issued subpoena to SC DHHS on the basis of relevance. Grey explains that defendants seek to use information about whether Grey's daughter receives means-tested benefits to show that Grey has failed or refused to support his daughter, meaning he does not have good moral character. To provide some context, "good moral character" is one of the prerequisites of naturalization. 8 U.S.C. §1427(a). Absent extenuating circumstances, a naturalization applicant will be found to lack good moral character if he "[w]illfully failed or refused to support dependents." 8 C.F.R. § 316.10(b)(3). Grey also argues that defendants can obtain the information they seek through discovery, which they had not yet attempted to do at the time he filed his motion.

As an initial matter, defendants point out that because they have not actually issued the subpoena yet, Grey should have filed a motion for a protective order under Rule 26 as opposed to a motion to quash a subpoena under Rule 45. Nevertheless, defendants acknowledge that the scope of discovery under both Rule 26 and Rule 45 is the same, meaning that the court's consideration of this issue would be the same if Grey had filed a motion for a protective order. Moreover, the parties do not dispute that Grey has standing to challenge the subpoena.

The crux of the disagreement here is whether Grey's daughter's receipt of means-tested benefits, particularly Medicaid, is relevant to whether Grey "willfully failed or refused to support" her. Grey argues that the acceptance of Medicaid actually shows that the parent is providing support to the child by way of ensuring medical treatment even

7

when the parent cannot afford it. He contends that defendants' "rationale stigmatizes the acceptance of Medicaid as a character flaw." ECF No. 44-1 at 4. In response, defendants argue that records submitted to SC DHSS on behalf of Grey's daughter may not be dispositive of whether Grey willfully failed or refused to support his daughter but are nevertheless relevant to whether Grey supports her and whether the information on her benefits application accurately portrays Grey's relationship and income. Defendants note that this issue is particularly critical because Haynes has been named as a witness in this case and both Haynes and Grey have provided conflicting statements about the child's support.

To be relevant, the discovery sought simply must be "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenhiemer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "Courts broadly construe relevancy in the context of discovery." Amick v. Ohio Power Co., 2014 WL 468891, at *1 (S.D.W. Va. Feb. 5, 2014). Even using this broad definition of relevance, the court fails to see how records related to Grey's daughter's receipt of Medicaid is relevant to show whether Grey willfully failed to support her. Grey doesn't seem to dispute that his daughter receives Medicaid, and the fact that his daughter receives Medicaid does suggest that Grey is unable to provide financial support for her medical care. However, the key issue is whether Grey willfully failed to support, because "courts agree that applicants for naturalization should not be punished if they were not at fault for failing to pay child support." Dos Reis v. McCleary, 200 F. Supp. 3d 291, 301–02 (D. Mass. 2016). Evidence showing that Grey's daughter receives Medicaid doesn't show willfulness. Indeed, the court is not even convinced that any information related to

8

Grey would be included in the records produced in response to the subpoena, as it appears that the application for Grey's daughter was filed by either Haynes or Grey's daughter's grandmother.

Instead, it appears that defendants are more interested in the underlying information that was used to determine whether Grey's daughter qualified for Medicaid. They argue that "whether information on the application accurately portrays Mr. Grey's relationship and income" is relevant. ECF No. 47 at 7. However, as Grey points out, defendants can ask Grey about this information and about any other information related to this issue during discovery. Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "the court must limit the . . . extent of discovery . . . if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Courts have quashed subpoenas when the opposing party can provide the information that the subpoena seeks. See HDSherer LLC v. Nat. Molecular Testing Corp., 292 F.R.D. 305, 309 (D.S.C. 2013) (quashing subpoena when information sought was in the defendant's possession and there was no reason to suggest that the defendant would not provide the information); In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C., 2016 WL 1071016, at *8 (E.D. Va. Mar. 17, 2016) ("There is no reason to burden a third party with discovery when the opposing party has all of the information requested.").

At the hearing on the motion, counsel for Grey informed the court that defendants served discovery on Grey last week. Counsel for defendants also indicated that they plan to depose Grey and Haynes. At this early stage of discovery, the court is unconvinced that a third-party subpoena is required to obtain the information that defendants seek.

Defendants can obtain the information they seek through discovery as opposed to issuing a third-party subpoena. As such, the court grants the motion.

### B. Motion for Summary Judgment

Defendants seek summary judgment on Grey's FOIA claim. They argue that they have conducted a reasonable search calculated to identify responsive records, produced those records to Grey in two phases, and lawfully claimed FOIA exemptions for the redactions they made. Defendants also argue that Grey's FOIA claim is largely moot because USCIS ultimately produced during discovery almost all of the documents it previously withheld as exempt under FOIA. In response, Grey argues that USCIS did not conduct a reasonable search for e-mails and over-redacted its training materials under the FOIA law enforcement exemption.

When a plaintiff seeks to compel production from a government agency under FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)). Indeed, "FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified." Wickwire Gavin, P.C. v. U.S. Postal Serv., 356 F.3d 588, 591 (4th Cir. 2004). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

### a. Mootness of FOIA Claim

Defendants first argue that Grey's FOIA claim is largely moot because "[t]he focus of the FOIA is information, not documents," Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977), and because Grey obtained the information he sought in his FOIA request through discovery in this case. Defendants rely on Williams & Connolly v. S.E.C., in which the court explained that "an agency has no obligation to release documents to a requester when another agency has already given the same requester the same documents." 662 F.3d 1240, 1243 (D.C. Cir. 2011). Defendants argue that under this logic, Grey's FOIA claim should be moot except for the redactions made for privilege in the discovery production and the FOIA redactions related to USCIS training records.

Grey does not respond to his argument in his brief, but based on the arguments he does make, it appears that he does not agree that his FOIA claim is moot with regard to e-mails. At the hearing on the motions and as discussed below, Grey's counsel explained that there appeared to be a discrepancy in e-mails produced during discovery and a lack of e-mails sent in response to his FOIA request, suggesting that defendants' FOIA search for e-mails was inadequate and that there could be more responsive e-mails that have not yet been produced. As such, the court is not convinced of the mootness of Grey's FOIA claim.

### b. Adequacy of Search for E-mails

Defendants first argue that summary judgment on Grey's FOIA claim is warranted because they conducted an adequate search of documents responsive to Grey's FOIA requests and produced those documents. In response, Grey argues that there is no

11

indication that USCIS conducted a reasonable search for e-mails related to Grey, which falls into part (c) of his FOIA request, and any e-mail—which falls into the category of "other documents" in part (d) of Grey's FOIA request—related to or indicative of an office policy related to Jamaican nationals who seek marriage-based immigration benefits after acquiring permanent residency.

"In judging the adequacy of an agency search for documents[,] the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents." Ethyl Corp. v. U.S. E.P.A., 25 F.3d 1241, 1246 (4th Cir. 1994) (internal citations omitted). "The adequacy of an agency's search is measured by a standard of reasonableness [ ] and is dependent upon the circumstances of the case." Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal citations omitted). Indeed, "[a] reasonably calculated search does not require that an agency search every file where a document could possibly exist, but rather requires that the search be reasonable in light of the totality of the circumstances." Rein v. U.S. Patent & Trademark Office, 553 F.3d 353, 364 (4th Cir. 2009).

To meet its burden of showing that its search was adequate, "the agency may submit affidavits or declarations that explain the scope and method of its search 'in reasonable detail.'" Ellis v. United States Dep't of Justice, 110 F. Supp. 3d 99, 104 (D.D.C. 2015) (quoting Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)). These affidavits or declarations "should set forth the search terms and the type of search performed [ ] and aver that all files likely to contain responsive materials (if such records exist) were searched." Id. "The court is entitled to accept the credibility of such

affidavits, so long as it has no reason to question the good faith of the agency." Heily v. U.S. Dep't of Commerce, 69 F. App'x 171, 173 (4th Cir. 2003). However, a requestor may rebut this good faith presumption and demonstrate a material issue of fact "by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." Id. "When deciding whether these burdens have been met, the district court must consider everything in the light most favorable to the nonmoving party." Id.

The affidavit of Jill A. Eggleston ("Eggleston Affidavit"), which is attached to defendants' motion for summary judgment, explains that USCIS Field Operations Directorate, the Charleston Field Office, and the Greer Field Office "searched their offices' share drive, e-mail archives, and computer hard drives seeking potentially responsive records" and that initially no responsive records were found to parts (b)–(e) of Grey's FOIA request. Eggleston Aff. ¶ 13. The Eggleston Affidavit also describes the search terms it used, stating that the Fraud Detection and National Security Directorate ("FDNS") used "Marriage Fraud" for parts (c), (d), and (e) of the FOIA request and the Field Office Director ("FOD") used Grey's first and last name, last name alone, and the terms "Marriage Fraud" and "Jamaican Marriage Fraud." Eggleston Aff. ¶ 18.

Grey first argues that the Eggleston Affidavit is unreliable because it claimed that there were no responsive records to parts (b)–(e) of Grey's FOIA request, but that USCIS did produce several e-mails from the officer that adjudicated Grey's naturalization application, and that more e-mails were produced during discovery. Grey also argues that it is unclear what search terms were used by the Charleston and Greer Field Offices, that the search terms identified in the Eggleston Affidavit were not sufficient, and that

13

there is no indication as to whether USCIS used Boolean search terms to look for responsive e-mails.

In response, defendants first focus on the language of Grey's FOIA request. The FOIA request language that relates to e-mails is from part (c), "All adjudicator's . . . e-mails" related to "any immigration benefit sought by or on behalf of [Grey]," and from part (d), "All agency-wide, Charleston Field Office, or Greer Field Office polices, memos, guidance, notes, investigations, or other documents [which includes e-mails, according to Grey] that indicate agency or field office policy" related to Jamaican nationals and marriage-based immigration benefits. Defendants note that Grey seems to have expected a search for documents responsive to these requests to produce e-mails by the officers who investigated Grey's case, who are different people than the "adjudicator" of Grey's naturalization application referenced in part (c), but that Grey did not request that information in his FOIA request. Instead, defendants argue, he only asked for his adjudicator's e-mails. Defendants explain that the adjudicator's e-mails related to Grey's immigration benefits would be in Grey's A-file, which was produced.

With regard to the search terms, defendants explain the search terms used by FOD and identified in the Eggleston Affidavit were also used at the Charleston and Greer Field Offices, and that the search was reasonably calculated to locate documents related to Grey and/or marriage-based benefits related to Jamaican nationals. Defendants also note that while an initial search did not reveal documents responsive to parts (b)–(e) of Grey's FOIA request, additional records were later processed and were sent in the second FOIA production. See Eggleston Aff. ¶ 17. Finally, defendants explain that USCIS does not

have a nationality-specific marriage fraud policy nor does it conduct nation-specific marriage fraud training, which explains the lack of e-mails on those topics.

At the hearing on the motion, there was disagreement over the interpretation of Grey's FOIA request and what e-mails should have been included in that search. Grey's counsel explained again that the Eggleston Affidavit indicated that there were no e-mails responsive to parts (b)–(e) of Grey's FOIA request but that he received several e-mails through discovery, suggesting that the FOIA search was inadequate. There was also disagreement over whether e-mails between Grey's adjudicator and the officers who investigated Grey were included in Grey's A-file. As such, the court instructs defendants to reaffirm in an affidavit the search that was conducted for e-mails and whether all e-mails were produced in Grey's A-file.

### c. Law Enforcement Exemption

Next, Grey argues that USCIS over-redacted its training materials under the law enforcement FOIA exemption and asks the court to either order USCIS to produce a Vaughn Index or to order USCIS to produce an unredacted version of these documents for the court's in camera review. FOIA exempts the production of:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7)(E). Whether this exemption applies entails a two-part inquiry. "First, the agency must demonstrate that the record was 'compiled for law enforcement purposes.'" Allnutt v. U.S. Dep't of Justice, 99 F. Supp. 2d 673, 679 (D. Md. 2000), aff'd sub nom. Allnut v. Handler, 8 F. App'x 225 (4th Cir. 2001) (quoting Federal Bureau

of Investigation v. Abramson, 456 U.S. 615, 622 (1982)).  If the records are compiled for law enforcement purposes, then the agency must show that release of those records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

    Beginning with the first prong of the inquiry, whether a record was compiled for law enforcement purposes, "courts will consider the law enforcement powers of the withholding agency as well as the purposes underlying the exemption." Allnutt, 99 F. Supp. 2d at 679 (internal citations omitted).  However, the "determinative factor" is "the purpose for which the agency compiled the document."  Id.  With regard to the second part of the inquiry, "[a]s used in Exemption 7(E), 'guidelines' refer to how the agency prioritizes its investigative resources, while 'techniques and procedures' cover 'how law enforcement officials go about investigating a crime.'"  Am. Civil Liberties Union of San Diego & Imperial Ctys. v. United States Dep't of Homeland Sec., 2017 WL 9500949, at *12 (C.D. Cal. Nov. 6, 2017).  "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  Blackwell v. F.B.I., 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

    Grey first argues that defendants' training materials, including PowerPoints and manuals, that contain redactions have no law enforcement purpose and that the redactions

of questions and answers are for testing the adjudicator's knowledge, not pursing an investigation. He contends that the materials' purpose is to train, not to detect, punish, or investigate, and that the materials are used to train officers of USCIS, which is not a law enforcement agency but a benefits adjudication agency. One specific example Grey mentions is the redaction of statistics related to "trends" in marriage fraud findings that appear to be compiled by country of origin. He argues that these statistics represent a collection of facts, serve no law enforcement purpose, and are directly responsive to Grey's FOIA request.

In response, defendants cite to several cases in which courts have found that USCIS is a law enforcement agency that can invoke Exemption 7(E). KXTV, LLC v. United States Citizenship & Immigration Servs., 2020 WL 1082779, at *5 (E.D. Cal. Mar. 6, 2020) (finding that USCIS is "responsible for the administration and enforcement of federal laws relating to the immigration and naturalization of aliens" and can invoke Exemption 7(E)); Am. Civil Liberties Union of S. California v. United States Citizenship & Immigration Servs., 133 F. Supp. 3d 234, 242 (D.D.C. 2015) (holding that "USCIS can invoke Exemption 7(E) even if it does not engage in traditional 'law enforcement' activities"); Isiwele v. United States Dep't of Health & Human Servs., 85 F. Supp. 3d 337, 359 (D.D.C. 2015) (permitting USCIS to invoke Exemption 7(E)). Therefore, as a general matter, the court is convinced that USCIS is a law enforcement agency for purposes of invoking Exemption 7(E).

However, the question of whether the specific redacted documents serve a law enforcement purpose still remains. Addressing this issue, defendants first discuss the statistics that Grey mentions. They argue that Grey did not request statistics but instead

requested records that "indicate agency or field office policy that relate to Jamaican nationals seeking marriage-based immigration benefits or naturalization . . ." and "[a]ll marriage fraud training materials, policies examples, or any other document . . . for the benefit of the adjudicator."  As such, defendants argue that the statistics are not directly responsive to Grey's FOIA request.  The problem with this argument is that the statistics are within the marriage fraud training materials that Grey requested.  At the hearing on the motions, counsel for defendants argued that generally statistics could serve a law enforcement purpose but did not explain how the specific redacted statistics at issue serve a law enforcement purpose.  This conclusory argument is insufficient for the court to determine whether the statistics within the training materials serve a law enforcement purpose.  See Ayyad v. Internal Revenue Serv., 2018 WL 704849, at *11 (D. Md. Feb. 2, 2018) ("Even with the more deferential standard given to law enforcement withholding, [an] agency's conclusory assertions cannot carry [its] FOIA burden.").

With regard to the rest of the training materials, the Eggleston Affidavit does not explain why those documents are exempt under Exemption 7(E) but instead simply state that documents were withheld under that exemption.  Defendants explain that the training materials "include modules on marriage fraud, including training on matters such as indicators of fraud, investigative steps and technique, issues in interview and examination settings, and criteria for enforcement."  ECF No. 45 at 16.  They argue that Exemption 7(E) applies to those materials, relying on Anguiano v. United States Immigration & Customs Enf't, 356 F. Supp. 3d 917 (N.D. Cal. 2018).  In Anguiano, the court found that training material and a policy refresher on the Fourth Amendment, which included "discussion of certain ERO-specific practices and procedures related to gathering

evidence, taking statements, utilizing law enforcement databases, and engaging in hot pursuit" and "step-by-step instructions for conducting particular removal operations and information on law enforcement databases" fell within Exemption 7(E). 356 F. Supp. 3d at 925. In making that determination, the court reviewed the materials in camera and concluded that "[t]he redacted material provides a 'detailed, technical analysis of the techniques and procedures used to conduct law enforcement investigations,' including 'details or means of deploying law enforcement techniques.'" Id. (quoting Am. Civil Liberties Union of N. California v. United States Dep't of Justice, 880 F.3d 473, 491–92 (9th Cir. 2018)).

   Here, defendants have not provided enough information through the Eggleston Affidavit or their briefing for the court to make a similar determination. Defendants contend that they cannot meaningfully respond about whether the materials are for law enforcement purposes because Grey does not refer to particular records, and his vague claim is insufficient to counter defendants' affidavit. In support of their argument, defendants cite to SafeCard Servs., Inc. v. S.E.C., which explains that "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" 926 F.2d 1197, 1200 (D.C. Cir. 1991). However, the problem with this argument is that the Eggleston Affidavit does not explain why documents were withheld under certain FOIA exemptions; instead, it just states the exemptions that USCIS invoked. Moreover, the language upon which defendants rely relates to challenges to the adequacy of a FOIA search, not the invocation of a FOIA exemption. And finally, at the hearing, counsel for Grey explained the difficulty of identifying specific documents that he challenges,

pointing out that the pages of the training materials were not numbered and that the materials were so heavily redacted that it is difficult to identify anything with specificity.

Like with the statistics, defendants' explanation about the purpose of the training materials is too vague for the court to determine if they fall within Exemption 7(E). As such, the court instructs defendants to produce a Vaughn index by July 6, 2020 detailing USCIS's justification for withholding training materials, including those listing statistics, on the basis of Exemption 7(E). Upon production of the Vaughn index, defendants may file a renewed motion for summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, the court grants the motion to quash and denies the motion for summary judgment without prejudice.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**June 11, 2020**
**Charleston, South Carolina**