IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| FABIAN GREY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 9:18-cv-01764-DCN |
| vs. ) | |
| ) | **ORDER** |
| KEN CUCCINELLI,[1] Acting Director, United ) | |
| States Citizenship and Immigration Services, ) | |
| and UNITED STATES CITIZENSHIP AND ) | |
| IMMIGRATION SERVICES, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The following matter is before the court on defendants Ken Cuccinelli ("Cuccinelli") and United States Citizenship and Immigration Services's ("USCIS") (collectively, "defendants") motion for summary judgment on plaintiff Fabian Grey's ("Grey") claim under the Freedom of Information Act ("FOIA"), ECF No. 60. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This matter arises out of Grey's application for naturalization. Grey is a Jamaican citizen who first entered the United States on a work visa on November 30, 2005. On February 2, 2006, Grey married a United States citizen, Trinia Smalls ("Smalls"), and Smalls petitioned for a marriage-based green card for Grey. Based on this petition, Grey became a conditional lawful permanent resident in January 2007. About two years later, Grey and Smalls petitioned to have the condition on Grey's residency removed, which

---

[1] Acting Director Ken Cuccinelli is automatically substituted for former Director L. Francis Cissna, who resigned effective June 1, 2019. Fed. R. Civ. P. 25(d).

1

USCIS granted, making Grey a lawful permanent resident. On February 17, 2016, Grey filed an application for naturalization. After a substantial delay in a decision on his application, Grey filed this suit on June 27, 2018 asking the court to declare him eligible for naturalization and order USCIS to naturalize him pursuant to 8 U.S.C. § 1447(b). Grey subsequently amended his complaint to add a cause of action seeking an order compelling USCIS to respond to his pending FOIA request pursuant to 5 U.S.C. § 552(a)(4)(B).

Defendants request summary judgment on Grey's claim under FOIA. Grey filed a FOIA request on June 26, 2018. He requested the following records from USCIS:

   a. Requestor's complete Alien Registration File;

   b. All documents indicating transfer of Requestor's Alien Registration File;

   c. All adjudicator's notes, memos, correspondence, communications, e-mails, legal research, factual research, intra-agency referrals for fraud, national security, or other investigations, and draft decisions or memos for any immigration benefit sought by or on behalf of the Requestor;

   d. All agency-wide, Charleston Field Office, or Greer Field Office policies, memos, guidance, notes, investigations, or other documents that indicate agency or field office policy that relate to Jamaican nationals seeking marriage-based immigration benefits or naturalization after acquiring permanent residency through marriage-based immigration benefits; [and]

   e. All marriage fraud training materials, policies, examples, or any other document provided to, created by, or distributed for the benefit of the adjudicators, supervisory adjudicators, any other employee in the Charleston Field office or Greer Field Office for the last two years.

ECF No. 45-1 at 13. USCIS identified 642 pages of responsive documents, 452 of which it produced in full and 187 of which it withheld or redacted on October 21, 2019 ("First FOIA Production").

Then on November 29, 2019, Grey served Requests for Production, some of which overlapped with his FOIA request. These include requests for:

> 1. All documents, whether written, electronic, or in any other form, that Defendants contend establish or support any fact upon which you base your defense in this lawsuit.
>
> . . .
>
> 5. The complete alien registration ["A-file"] file for Mr. Grey (A096811204).
>
> . . .
>
> 7. All correspondence involving Mr. Sullivan, Mr. Lyttle, or Mr. Brown related [to] Mr. Lyttle and Mr. Sullivan's "site visit" to Mr. Grey's home on June 19, 2018.
>
> 8. All contemporaneous and edited reports, notes, pictures, findings, or any other recorded recollection or piece of hard evidence that Mr. Lyttle or Mr. Sullivan drafted, acquired, assisted with, or gathered during the June 19, 2018 "site visit" of Mr. Grey's home.

ECF No. 45-2. Defendants produced responsive documents and an accompanying privilege log on January 17, 2020. ECF No. 45-3.

Based on these productions, defendants filed their first motion for summary judgment on Grey's FOIA claim on February 28, 2020. ECF No. 45. Thereafter, USCIS identified a second set of records responsive to Grey's FOIA request consisting of 1,963 pages of record. On April 17, 2020, USCIS produced 905 of those pages in full and "1,044 pages in full or part, as well as one Excel spreadsheet in part" ("Second FOIA Production"). ECF No. 60 at 5. On June 11, 2020, the court denied defendants' motion for partial summary judgment without prejudice. ECF No. 58. The court explained that it could not determine whether USCIS had responded in full to Grey's FOIA request

because USCIS withheld certain responsive training materials under "Exemption 7(E)"[2] and defendants' explanation for invoking the exemption was "too vague for the court to determine whether [the withheld records] fall within" the exemption. Id. at 20. As such, the court instructed defendants to produce a Vaughn index "detailing USCIS's justification for withholding training materials, including those listing statistics, on the basis of Exemption 7(E)" and authorized defendants to file a renewed motion for summary judgment when they had done so. Id.

On July 6, 2020 defendants filed a Vaughn Index and clarified their position for withholding the training records under Exemption 7(E). ECF No. 59-1. Defendants attached to the Vaughn Index a copy of the redacted Second FOIA Production. ECF Nos. 59-3–59-8. Through what defendants describe as an "inadvertent clerical error," the last 305 pages of that production, identified by Bates Numbers 1658 to 1963, were not redacted. ECF No. 74 at 3. Instead, the intended redactions are blocked in white with the allegedly applicable exemptions noted but the underlying information visible to the reader. See ECF Nos. 59- 7, 59-8 (the "disclosed records"). In other words, rather than being redacted with an opaque black box, the portions of the records that were meant to be redacted are instead bordered with a thin black line.

On July 30, 2020, defendants filed their renewed motion for partial summary judgment on Grey's FOIA claim. ECF No. 60. On August 24, 2020, Grey responded to the motion, ECF No. 65, and on August 31, 2020 defendants replied, ECF No. 66. The court scheduled a hearing on defendants' renewed motion for September 28, 2020. After reviewing the parties' briefs, the court determined that the only practicable way to resolve

---

[2] 5 U.S.C. § 552(b)(7)(E).

4

the motion was to conduct an in camera review of the disputed records, as defendants suggested in their reply brief. See ECF No. 66 at 6. The court cancelled the hearing and notified the parties, informing them that broad-strokes application of the law to over 1,000 pages of records at once or to each entry of the 38-page Vaughn Index was not feasible. Accordingly, defendants provided the court with unredacted copies of the relevant documents.

On September 30, 2020, Grey and defendants filed respective motions for summary judgment on Grey's claim for naturalization. ECF Nos. 70, 71. Grey's motion relies in part on information contained in the records defendants inadvertently disclosed in the Second FOIA Production, copies of which he also attached to his motion. Defendants claim that they learned of their inadvertent disclosure of the disclosed records upon reading Grey's motion. Immediately thereafter, counsel for defendants informed Grey's counsel that the disclosure was inadvertent and requested that Grey return, sequester, or destroy the inadvertently disclosed records. Grey eventually agreed to not further disseminate the disclosed records until the court weighed in on the matter, but also informed defendants that he did not realize the disclosure was inadvertent and that he had already disseminated the disclosed records to some extent. On October 2, 2020, defendants filed a motion to seal to the inadvertently disclosed records, ECF No. 72, and, on October 14, 2020, a motion for a protective order with respect to the disclosed records, ECF No. 74. After a hearing on the matter, the court granted both motions, sealing the inadvertently disclosed records and ordering Grey to "destroy or return all copies" thereof "until the court resolves defendants' summary judgment motion on [Grey]'s FOIA claim

on the merits." ECF No. 86 at 12. The court held a hearing on the motion on February 8, 2021. This matter is now ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for

6

trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

When a plaintiff seeks to compel production from a government agency under FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)). Indeed, "FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified." Wickwire Gavin, P.C. v. U.S. Postal Serv., 356 F.3d 588, 591 (4th Cir. 2004). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

### III.  DISCUSSION

In their renewed motion, defendants argue that summary judgment is appropriate on Grey's FOIA cause of action because USCIS "has made the required search and produced the responsive, non-exempt records." ECF No. 60 at 2. Defendants explain

that the withheld or redacted records fall within the law enforcement exemption as a matter of law. In response, Grey, unsatisfied by the Vaughn Index, renews his argument that the withheld and redacted "training materials, and the statistics contained therein, are not protected by the law enforcement privilege." ECF No. 65 at 2. As discussed above, the court was unable to resolve defendants' motion for summary judgment through analysis of the Vaughn Index alone. In an email to the parties, the court ordered defendants to produce the relevant documents for in camera review and sought clarification as to the specific withheld records Grey challenges. In response, counsel for Grey stated that Grey challenges the training materials USCIS chose not to disclose or disclosed in a redacted form pursuant to the law enforcement exemption, which are identified by Bates Numbers 001–1654. Accordingly, defendants provided the court with unredacted copies of the relevant documents. The court discusses its conclusions of relevant law before applying that law to the in camera records.

FOIA "calls for broad disclosure of government records." C.I.A. v. Sims, 471 U.S. 159, 167 (1985). FOIA specifically provides, in relevant part, that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Nevertheless, because "Congress realized . . . that public disclosure is not always in the best interest of the public," id., the statute provides several exceptions and exemptions pursuant to which an agency may shield qualifying records, 5 U.S.C. § 552(b). Courts recognize FOIA's "strong presumption in favor of disclosure," which

places the burden on the agency to demonstrate that the claimed exemption applies to withheld records. U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991).

FOIA's "Exemption 7(E)," or the "law enforcement exemption," exempts a government agency from being compelled to produce:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7)(E). Whether this exemption applies entails a two-part inquiry. "First, the agency must demonstrate that the record was 'compiled for law enforcement purposes.'" Allnutt v. U.S. Dep't of Justice, 99 F. Supp. 2d 673, 679 (D. Md. 2000), aff'd sub nom. Allnut v. Handler, 8 F. App'x 225 (4th Cir. 2001) (quoting Federal Bureau of Investigation v. Abramson, 456 U.S. 615, 622 (1982)). If the records are compiled for law enforcement purposes, then the agency must show that release of those records either: (1) "would disclose techniques and procedures for law enforcement investigations or prosecutions" or (2) "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). As the plain language of the statute makes clear, withholding "guidelines for law enforcement investigations or prosecutions" requires the government to show that "disclosure could reasonably be expected to risk circumvention of the law," while withholding "techniques and procedures for law enforcement investigations or prosecutions" does not require an additional showing. Hamdan v. U.S. Dep't of Justice, 797 F.3d 759, 778 (9th Cir. 2015) ("The sentence structure of Exemption (b)(7)(E) indicates that the qualifying phrase, 'if such disclosure could

reasonably be expected to risk circumvention of the law,' modifies only 'guidelines' and not 'techniques and procedures.'").[3]

"The term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Pers. Mgmt., 76 F.3d 1240, 1243 (D.C. Cir. 1996); see also Moore–McCormack Lines, Inc. v. I.T.O. Corporation of Baltimore, 508 F.2d 945, 949 (4th Cir. 1974). "To determine whether a particular record was compiled for law enforcement purposes, courts will consider the law enforcement powers of the withholding agency [ ] as well as the purposes underlying the exemption." Allnutt, 99 F. Supp. 2d at 680 (D. Md. 2000) (internal citations omitted). Moreover, while Exemption 7(E) does not protect techniques "generally known to the public," Rosenfeld v. U.S. Dep't of Justice, 57 F.3d 803, 815 (9th Cir. 1995), it can exempt lesser-known, specific methods and strategies applied in connection with generally known techniques," Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 50 (D.D.C. 1999). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding;" nevertheless, the agency still must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Blackwell v. F.B.I., 646 F.3d 37, 42 (D.C. Cir. 2011).

Under the first prong of the inquiry, Grey argues that the training records, including the statistics about marriage fraud compiled therein "were compiled to train officers, not [for] enforcement purposes." ECF No. 65 at 3. In other words, Grey argues

---

[3] Grey indicates that both the "techniques" and "guidelines" prongs of Exemption 7(E) require an additional showing that the "disclosure could reasonably be expected to risk circumvention of the law." ECF No. 65 at 2 (citing U.S.C. § 552(b)(7)(E)). The law is clear, however, that the additional showing applies only to the "guidelines" prong.

that the training records, regardless of their content, cannot be withheld under Exemption 7(E) because the USCIS uses those records to train agents how to enforce the law rather than to actually enforce law.  Grey's argument fails because training officers how to enforce the law is a "law enforcement purpose."  Before enforcing the law, an officer must learn how to enforce it.  And of course, the USCIS trains officers how to enforce the law so that they might one day actually enforce it.  The fact that training an officer to enforce the law is one small step removed from actual enforcement of the law does not mean that it serves a law enforcement purpose any less.  As such, the fact that an otherwise exempted record is used to train rather than to enforce does not automatically subject that record to disclosure.  See Anguiano v. United States Immigration & Customs Enf't, 356 F. Supp. 3d 917, 925 (N.D. Cal. 2018) (finding that the government "properly invoked Exemption 7(E) over" certain training materials that contained law enforcement techniques).

The letter and spirit of the exemption compel this conclusion.  Exemption 7(E) protects records that "would disclose techniques and procedures for law enforcement investigations or prosecutions."  5 U.S.C. § 552(b)(7)(E).  Courts have consistently shielded these kinds of records from disclosure, regardless of the way in which the agency utilizes them.  See Am. Civil Liberties Union of S. California v. United States Citizenship & Immigration Servs., 133 F. Supp. 3d 234, 242–43 (D.D.C. 2015) ("The amended threshold to Exemption 7 'resolve[s] any doubt that law enforcement manuals and other non-investigatory materials can be withheld under (b)(7) if they were compiled for law enforcement purposes . . . .'"); see also Concepcion v. F.B.I., 606 F. Supp. 2d 14, 44 (D.D.C. 2009) (finding that Exemption 7(E) applied to records that might help future

criminals predict future investigative techniques). The statute makes no distinction between techniques and procedures used to guide active investigations by veteran officers and ones used to train rookie officers how to investigate. It is inconceivable that Congress intended Exemption 7(E) to protect records of investigative techniques, procedures, and guidelines generally but not to protect the same records when they are used to train future investigators. The underlying rationale of Exemption 7(E) is to prevent potential wrongdoers from gaining an advantage over law enforcement officials. Revealing law enforcement techniques and strategies undercuts that purpose whether the specific records that contain them were designed to train new officers or guide experienced ones. See Allnutt, 99 F. Supp. 2d at 680 ("To determine whether a particular record was compiled for law enforcement purposes, courts will consider . . . the purposes underlying the exemption."). As such, the court rejects Grey's argument that a record's use in training disqualifies it from protection under the law enforcement exemption.

In the same vein, Grey argues that the training materials were not compiled for a "law enforcement purpose" because they are used to train Fraud Detection and National Security Immigration Officers ("FDNS IOs"), who Grey classifies as "non-enforcement officers," rather than immigration service officers ("ISOs"), who Grey contends "actually decide or adjudicate cases." ECF No. 65 at 4 n.2. The court finds this argument equally unconvincing. Records that are used to train officers who do not actually carry out the enforcement of the law nevertheless serve a clear law enforcement purpose. Grey admits that FDNS IOs "investigate," but argues they do not enforce the law because they do not "actually make the decisions." ECF No. 65 at 4 n.4. Grey's argument ignores that investigation is an important component of enforcing the law and thus constitutes a law

enforcement purpose. The fact that FDNS IOs investigate behind the scenes, rather than make public-facing decisions, does not mean that they do not contribute meaningfully to the enforcement of the law. Their investigative work serves a clear law enforcement purpose. Further, Exemption 7(E) applies to records, not the agents that utilize them. The exemption specifically applies to "law enforcement investigations," meaning that records need not apply to public-facing enforcement of the law to receive protection under the Exemption 7(E). 5 U.S.C. § 552(b)(7)(E). Accordingly, the court rejects Grey's argument that the training records used to train FDNS IOs are not compiled for law enforcement purposes and thus fall outside of Exemption 7(E).

Next, Grey argues that "the training [records] and their statistics reveal no secret 'guidelines,' 'techniques,' or 'procedures.'" ECF No 65 at 4; see Rosenfeld, 57 F.3d at 815 (noting that Exemption 7(E) does not protect techniques "generally known to the public"). Specifically, Grey argues that "the Vaughn Index [does not] hint that the revelation of the training [records] will reveal secret or unknown techniques or procedures." ECF No. 65 at 6. In response, defendants argue:

> [D]isclosing the redacted portions of the training records would expose internal techniques and procedures as well as guidelines that immigration officers use to investigate and adjudicate immigration petitions or applications. Disclosure of the redacted law-enforcement techniques and procedures and guidelines would allow an individual to evade, for instance, law enforcement record checks and security vetting procedures undertaken in processing an individual's immigration petition or application. Such a release would allow individuals to screen their application to account for the fraud indicators, patterns and trends used by USCIS to identify potential fraud.

ECF No. 66 at 6. Indeed, the Vaughn Index notes that many of the redacted materials contain confidential "techniques, procedures, and guidelines" for the purpose of law enforcement. The court resolves these arguments on a document-by-document basis in

13

its in camera review, finding that records that reveal well-known techniques, guidelines, and procedures fall outside of the scope of Exemption 7(E).

Finally, Grey argues that disclosure of the training records and statistics "will not lead to circumvention of the law." ECF No. 65 at 6. As an initial matter and as discussed above, defendants do not need to show the "circumvention" element to the extent that they withhold records of law enforcement "techniques" and "procedures." Hamdan, 797 F.3d at 778. With respect to records that reveal "guidelines," however, Grey's argument applies. While the line separating "techniques and procedures" from "guidelines" is thin, the Second Circuit has provided a helpful example illustrating the difference:

> [I]f a law enforcement agency concerned with tax evasion directs its staff to bring charges only against those who evade more than $100,000 in taxes, that direction constitutes a "guideline." . . . [However], if the same agency informs tax investigators that cash-based businesses are more likely to commit tax evasion than other businesses, and therefore should be audited with particular care, focusing on such targets constitutes a "technique or procedure" for investigating tax evasion.

Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 626 F.3d 678, 682 (2d Cir. 2010). In its review, the court remains cognizant of this thin line.[4] More generally, the court remains mindful that Exemption 7(E) sets a "relatively low bar" for the agency to justify withholding. Blackwell, 646 F.3d at 42.

With the preceding law and analysis firmly in mind, the court conducted an in camera review of the relevant materials, marked as Bates Numbers 001–1654. The court finds that the majority of the withheld or redacted records fall within Exemption 7(E) and

---

[4] The court agrees with Grey that statistics cannot be reasonably classified as "techniques" or "procedures." However, some could be considered "guidelines" to the extent that they inform investigators how to investigate. Of course, statistics qualifying as guidelines must be shown to present a risk of circumvention of the law before falling within Exemption 7(E).

are thus properly withheld or redacted in accordance with FOIA.[5] The following records, however, fall outside of Exemption 7(E) and are subject to disclosure: 4–8, 10–11, 35–36, 82–84, 86–87, 124, 143, 156, 172, 179, 185–186, 261, 693, 699, 708, 805, 914, 916, 931, 937, 946–948, 951, 955, 961, 968–969, 1020, 1080, 1323, 1327, 1329, and 1374. In accordance with the above law, the court has determined that these records either (1) do not constitute guidelines, techniques, or procedures, (2) constitute guidelines but do not risk circumvention of the law, or (3) are generally known to the public. As such, they are subject to disclosure.

Accordingly, the court grants summary judgment in favor of defendants with respect to the records that are properly withheld, i.e., those not listed above. The court denies summary judgment with respect to the above-listed records and orders defendants to turn over unredacted copies of the same.

---

[5] As an additional note, USCIS withholds many of the records within the court's review under exemptions other than Exemption 7(E). Grey made explicit that he does not challenge the records on any basis other than Exemption 7(E); therefore, the court considers the records withheld under other exemptions as undisputed.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS IN PART AND DENIES IN PART** the motion.

**AND IT IS SO ORDERED.**

                              **DAVID C. NORTON**
                              **UNITED STATES DISTRICT JUDGE**

**March 10, 2021**
**Charleston, South Carolina**