**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| FABIAN GREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:18-cv-01764-DCN |
| | ) | |
| UR JADDOU,[1] *Director of United States Citizenship and Immigration Services*, and UNITED STATES CITIZEN AND IMMIGRATION SERVICES, | ) ) ) ) ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

The following matter is before the court on third parties John Adams ("Adams") and Ryan Chin's ("Chin") motion to quash, ECF No. 98. For the reasons set forth below, the court denies Adams and Chin's motion.

### I. BACKGROUND

This matter arises out of plaintiff Fabian Grey's ("Grey") application for naturalization. Grey is a Jamaican citizen who first entered the United States on a work visa on November 30, 2005. On February 2, 2006, Grey married a United States citizen, Trinia Smalls ("Smalls"), and Smalls petitioned for a marriage-based green card for Grey. Based on this petition, Grey became a conditional lawful permanent resident in January 2007. About two years later, Grey and Smalls petitioned to have the condition on Grey's residency removed, which defendant United States Citizenship and Immigration Services ("USCIS") granted, making Grey a lawful permanent resident. On February 17, 2016,

---

[1] Ur Jaddou is now the Director of United States Citizenship and Immigration Services. Pursuant to Federal Rule of Civil Procedure 25(d), Jaddou is automatically substituted for former Acting Director Tracy Renaud as the defendant in this lawsuit.

1

Grey filed an application for naturalization, also called a "Form N-400." On his Form N-400, Grey disclosed one prior criminal conviction from 2009 for simple assault and battery. ECF No. 70-1 at 15.

On September 7, 2017, USCIS conducted Grey's naturalization interview, led by an immigration service officer ("ISO"). At his interview, Grey disclosed a second arrest, which related to an incident that took place in February 2016, just after Grey filed his application. Id. According to the ISO's notes, Grey stated at his naturalization interview that he was arrested for filing a false police report after he called 9-1-1 "to report a fight." Id. at 16. The next day, USCIS ran a "Law Enforcement Report" on Grey, which revealed his February 2016 arrest for "misprision of a felony," a state charge that was later reduced to "filing a false police report." ECF No. 95-2 at 1; ECF No. 70-6, Grey Dep. 57:13–60:13. However, USCIS failed to pursue Grey's February 2016 arrest as a ground for denying his application for almost three years, until defendants deposed Grey in August 2020.

After a substantial delay in a decision on his application, Grey filed this suit on June 27, 2018, asking the court to declare him eligible for naturalization and order USCIS to naturalize him pursuant to 8 U.S.C. § 1447(b).[2] On August 3, 2018, USCIS issued a Notice of Intent to Deny to Grey, indicating that it intended to deny Grey's naturalization application based on marriage fraud and providing Grey with thirty days to respond with evidence that his application should not be denied. USCIS then filed a motion to remand

---

[2] Grey subsequently amended his complaint to add USCIS as a defendant and a cause of action seeking an order compelling USCIS to respond to his pending Freedom of Information Act ("FOIA") request pursuant to 5 U.S.C. § 552(a)(4)(B). The court has since resolved Grey's FOIA claim. ECF No. 94.

Grey's application for naturalization to USCIS for adjudication, which the court denied. ECF No. 26.

On August 28, 2020, defendants took Grey's deposition, during which Grey gave a more detailed recounting of his February 2016 arrest. According to defendants, Grey's "characterization of his misprision of a felony charge at his August 28, 2020 deposition lacked credibility and led USCIS to seek further information about the charge." ECF No. 93 at 3. In their subsequent search, defendants obtained a police report detailing the circumstances of Grey's February 2016 arrest from the Beaufort County Solicitor's Office on September 17, 2020 (the "2016 Police Report"). ECF No. 70-4. On October 28, 2020, defendants obtained further evidence concerning Grey's February 2016 arrest from the Beaufort County Solicitor's Office in the form of audio and video recordings of police interviews with Grey conducted shortly after his arrest (the "2016 Audio/Video Recordings"). ECF Nos. 87-1, 87-2, 87-3. Defendants' subsequent motion for summary judgment and supplement thereto relied on the 2016 Police Report and the 2016 Audio/Video Recordings, suggesting that USCIS would deny Grey's application based on the February 2016 arrest.

On April 8, 2021, the court entered an order dismissing the parties' respective motions for summary judgment until Grey received an opportunity to conduct his own discovery in connection with the newly-obtained 2016 Police Report and the 2016 Audio/Video Recordings. ECF No. 94. As part of those discovery efforts, Grey noticed

the deposition and subpoenaed[3] the records of two officers—Adams and Chin—who interviewed Grey after his 2016 arrest.

On April 20, 2022, Adams and Chin filed their motion to quash the subpoena. ECF No. 98. On May 3, 2022, defendants[4] responded in opposition. ECF No. 99. Adams and Chin did not file a reply, and the time to do so has now expired. As such, the motion has been fully briefed and is now ripe for review.

## II.   STANDARD

Under Federal Rule of Civil Procedure 45, a party may compel a nonparty's attendance to a deposition. Rule 45 also permits the subpoenaed nonparty to quash or modify a subpoena where it, inter alia, "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The scope of discovery under a subpoena is the same as the scope of discovery under Federal Rule of Civil Procedure 26(b). Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012). When discovery is sought from nonparties, however, its scope must be limited even further. Va. Dep't of Corr. v. Jordan, 921 F.3d 180, 189 (4th Cir. 2019). As the Fourth Circuit explained in Jordan,

> Nonparties are "strangers" to the litigation, and since they have "no dog in [the] fight," they have "a different set of expectations" from the parties themselves. Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998). Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery. For example, a party's email provider might well

---

[3] According to defendants, the subpoena also requested "[a]ll records related to the investigation of Fabian Grey not already produced." ECF No. 99 at 4 n.4. Neither side to the motion attached the subpoena, but in the absence of any objection, the court presumes that this is the relevant portion of the subpoena duces tecum.

[4] Although the subpoena was apparently issued by Grey, defendants are the ones who oppose Adams and Chin's motion to quash, presumably because they desire the opportunity to subpoena Adams and Chin as well.

4

> possess emails that would be discoverable from the party herself. But unless the email provider can offer important information that cannot be obtained from the party directly, there would be no cause for a subpoena against the provider.
>
> A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty "subjects a person to undue burden" and must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iv). As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient. In re Modern Plastics Corp., 890 F.3d 244, 251 (6th Cir. 2018); Citizens Union of N.Y.C. v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). But courts must give the recipient's nonparty status "special weight," leading to an even more "demanding and sensitive" inquiry than the one governing discovery generally. In re Public Offering PLE Antitrust Litig., 427 F.3d 49, 53 (1st Cir. 2005).

Id.

Likewise, Federal Rule of Civil Procedure 26(c) authorizes the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense" by forbidding or limiting the scope of discovery. "The standard for issuance of a protective order is high," Wellin v. Wellin, 211 F. Supp. 3d 793, 800 (D.S.C. 2016), order clarified, 2017 WL 3620061 (D.S.C. Aug. 23, 2017), and the movant "bears the burden of establishing good cause," Slager v. S. States Police Benevolent Ass'n, Inc., 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016). A motion for a protective order requires the court to "weigh the need for the information versus the harm in producing it." Wellin, 211 F. Supp. at 800 (quoting A Helping Hand, LLC v. Balt. Cnty., 295 F. Supp. 2d 585, 592 (D. Md. 2003)). In determining whether to quash a subpoena or issue a protective order, as with most matters of discovery, the court wields broad discretion. Cook, 484 F. App'x at 812 (motions to quash); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) (protective orders).

5

### III.  DISCUSSION

Adams and Chin move the court to quash the subpoena for their deposition pursuant to Federal Rule of Civil Procedure 26 or, in the alternative, to enter an order protecting them from compliance with the same.  In support of their motion, Adams and Chin argue that the subpoena seeks the disclosure of privileged or other protected information.  Specifically, they aver that the information sought by the parties "has been expunged by Order of the Court of General Sessions for the State of South Carolina dated March [9], 2017."[5]  ECF No. 98-1 at 2.  Accordingly, Adams and Chin argue that disclosing the requested records or testifying at a deposition would cause them to violate the expungement order and could subject them to contempt of court for violating the order.

Although Adams and Chin do not specify, the expungement order was issued pursuant to South Carolina's expungement statute, S.C. Code Ann. § 17-1-40.  See ECF No. 98-2 at 1 (ordering that all records relating to the arrest and discharge be expunged with the conditions set forth under § 17-1-40).  That statute provides, in relevant part:

> (A) For purposes of this section, "under seal" means not subject to disclosure other than to a law enforcement or prosecution agency, and attorneys representing a law enforcement or prosecution agency, <u>unless disclosure is allowed by court order</u>.
>
> (B)(1) If a person's record is expunged pursuant to Article 9, Title 17, Chapter 22 . . . and the charge was discharged, proceedings against the person were dismissed, or the person was found not guilty of the charge, then <u>the arrest and booking record, associated bench warrants, mug shots, and fingerprints of the person must be destroyed</u> and no evidence of the record pertaining to the charge or associated bench warrants may be retained by any municipal, county, or state agency . . . .

---

[5] Adams and Chin wrote in their motion that the expungement order was dated March 6, 2017, but it appears to the court that the order was signed on March 9, 2017. ECF No. 98-2 at 2.

> (C)(1) If a person's record is expunged pursuant to Article 9, Title 17, Chapter 22 . . . and the charge was discharged, proceedings against the person were dismissed, or the person was found not guilty of the charge, then <u>law enforcement and prosecution agencies shall retain the evidence gathered, unredacted incident and supplemental reports, and investigative files under seal for three years and one hundred twenty days</u> . . . . The information must remain under seal. The information is not a public document, is exempt from disclosure, <u>except by court order</u>, and is not subject to an order for destruction of arrest records.

S.C. Code § 17-1-40(A)–(C)(1) (emphases added). Further, as contemplated under subsections (B)(1) and (C)(1), the charge against Grey was "nol prossed" based on § 17-22-150(a); thus, § 17-1-40 applies. ECF No. 98-2 at 1.

In response to the motion to quash, defendants argue that § 17-1-40 "does not require the destruction of investigative reports" or other similar evidence. ECF No. 99 at 5. Further, defendants state that they do not object to a protective order providing for disclosure, which is contemplated by § 17-1-40's exclusion for documents disclosed pursuant to court order. <u>Id.</u> at 7. The court agrees on both fronts. Section 17-1-40(B)(1) provides for the destruction of "bench warrants, mug shots, and fingerprints." S.C. Code § 17-1-40(B)(1). The requests for records and information from Adams and Chin do not appear to contemplate disclosure of bench warrants, mug shots, or fingerprints. Subsection (C)(1) further provides that incident and supplemental reports and investigative files shall be retained for three years and one hundred twenty days. S.C. Code § 17-1-40(C)(1). Certainly, more than five years have elapsed since the South Carolina Court of General Sessions entered Grey's expungement order on March 9, 2017. However, nothing in the subsection states that law enforcement <u>must</u> destroy the documents after that period has elapsed; subsection (B)(1) provides that the only documents that must be destroyed are bench warrants, mug shots, or fingerprints. Since the statute does not require the destruction of investigative files, those documents, at least

7

in theory, may still exist and be in the officers' possession.[6] The court therefore agrees with defendants that the investigative files should not automatically be deemed destroyed, and the parties may request such documents, where relevant. If the police department destroyed such documents, then they may respond to the subpoena stating the same.

Furthermore, the court agrees that the expungement statute does not preclude the officers from complying with the subpoena in this case. Importantly, the section provides that documents under seal may not be disclosed "unless disclosure is allowed by court order." S.C. Code § 17-1-40(A)(1) (emphasis added); see also Baney v. Town of Chapin, 2021 WL 1313410, at *1 (D.S.C. Apr. 7, 2021) ("Under South Carolina law, expunged records may be disclosed when 'allowed by court order.'"). Even subsection (C)(1), which governs incident and supplemental reports and investigative files, provides that records under seal may be disclosed when allowed "by court order." S.C. Code § 17-1-40(C)(1). Therefore, compliance with the subpoena would be entirely proper should this court order the officers to do so. In Baney, the magistrate judge allowed discovery of expunged records because the records were relevant to the lawsuit and the production of the records would be limited to discovery in that civil suit. Id. The court similarly finds that production of the expunged records is relevant to Grey's lawsuit, as both parties are seeking to determine whether defendants may appropriately deny Grey's application for filing a false report. Because Adams and Chin may properly disclose the requested information under § 17-1-40 pursuant to a court order, the court will order compliance

---

[6] Indeed, as defendants point out, guidance from the state attorney general's office indicates that "incident reports and other investigative records or evidence are generally not subject to expungement." Loftis Letter, 2014 WL 1511517 (S.C. Att'y Gen. Apr. 10, 2014).

8

with the subpoena since it does not require Adams and Chin to violate the South Carolina expungement statute.

Finally, even if the court disregarded the expungement statute's explicit exception that permits disclosure of expunged records pursuant to court order, the court finds that the officers can comply with the subpoena, at least in part, without disclosing protected information. As the Supreme Court of South Carolina has explained, the expungement statute "does not apply to any recordation of historical events beyond the charge itself." Compton v. S.C. Dep't of Corrs., 709 S.E.2d 639, 643 (S.C. 2011). In other words, "the facts precipitating the charge are not covered by this statute because they are mere events that exist irrespective of any criminal proceedings." Id. Based on the South Carolina Supreme Court's holding, defendants argue that there is a difference between disclosing documents concerning Grey's arrest for failure to report a crime and facts about Grey's alleged provision of a false report to the police during a shooting investigation. This appears to be a somewhat loose distinction, but the court agrees that it a distinction that other courts have indeed recognized. See id. (determining that § 17-1-40 draws a distinction between records related to the plaintiff's "fugitive from justice" charges and information about whether he was away without leave from prison); Vaughn v. State, 2013 WL 442297, at *3 (D.S.C. Feb. 5, 2013) (permitting use of "evidence of the events underlying" the plaintiff's prior arrest as the basis for an indictment on a different charge); Ferrara v. Hunt, 2013 WL 8482336, at *3 (S.C. Ct. C.P. (Aiken) Apr. 3, 2013) (ruling that the facts precipitating the criminal charges for soliciting sex were not covered by the expungement statute). The subpoena requests "[a]ll records related to the investigation of Fabian Grey not already produced." ECF No. 99 at 4 n.4. Based on prior

caselaw analyzing the expungement statute, the court finds that responsive documents that do not directly reflect Grey's charge for misprision of a felony are discoverable. Adams and Chin will not violate the statute by complying with the subpoena to this extent.

In sum, South Carolina's expungement statute does not bar Adams and Chin from disclosing the information Grey provided them during their investigation, and the officers provide no other argument in support of their request for a protective order or to quash the subpoena. As such, Adams and Chin have not met their burden for relief from compliance with the subpoena. Accordingly, the court orders[7] Adams and Chin to comply with the third-party subpoena and will allow Grey and defendants to depose Adams and Chin. However, for the reasons discussed above, the subpoena for documents should not be construed as one that requests any bench warrants, mug shots, fingerprints, or information directly reflecting Grey's charge for misprision of a felony. Furthermore, any subpoenaed documents should be provided under seal.

### III.   CONCLUSION

For the reasons set forth above, the court **DENIES** Adams and Chin's motion to quash.

---

[7] Adams and Chin may consider this an order that allows their compliance to be deemed a "disclosure . . . allowed by court order" under S.C. Code § 17-1-40(A).

    **AND IT IS SO ORDERED.**

                                        **DAVID C. NORTON**
                                        **UNITED STATES DISTRICT JUDGE**

**May 31, 2022**
**Charleston, South Carolina**

11